Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ORLANDO JOSÉ PABÓN DEL RÍO<br><br>*Recurrido*<br><br><br>v.<br><br><br>CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO Y OTROS<br><br>*Peticionario* | TA2026CE00765 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2024CV07695 (808)<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente, el Juez Ronda Del Toro[1], la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 30 de junio de 2026.

Comparece ante nos, la Corporación del Fondo del Seguro del Estado (CFSE o peticionaria) mediante recurso de *Certiorari Civil* y solicita que revoquemos la *Resolución*[2] emitida y notificada el 15 de mayo de 2026 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro recurrido). Mediante el referido dictamen, el TPI declaró *No Ha Lugar* la *Moción de Sentencia Sumaria*[3] presentada por la peticionaria.

Por los fundamentos que expondremos a continuación, ***denegamos*** la expedición del recurso de *Certiorari*.

**I.**

El caso de autos tuvo su génesis el 21 de agosto de 2024, cuando el señor Orlando José Pabón del Río (señor Pabón del Río o recurrido) instó una *Demanda*[4] sobre daños y perjuicios en contra del CFSE. En síntesis, el señor Pabón del Río arguyó que la

---

[1] Véase la Orden Administrativa OATA-2026-080 emitida el 16 de junio de 2026.
[2] Apéndice 67 del recurso de *Certiorari*.
[3] Apéndice 63 del recurso de *Certiorari*.
[4] Apéndice 1 del recurso de *Certiorari*.

peticionaria fue negligente al no certificar oportunamente su incapacidad ocupacional tras un accidente laboral, lo que retrasó por siete años la aprobación de su pensión. Por ello, reclamó noventa y dos mil setecientos treinta y seis dólares ($92,736.00) por beneficios dejados de percibir y cincuenta mil dólares ($50,000.00) por daños emocionales.

Tras varios incidentes procesales, el 12 de mayo de 2025, la CFSE sometió su *Contestación a la Demanda*[5]. Allí negó responsabilidad por los daños reclamados por el recurrido y alegó que actuó conforme a la ley y al estándar de cuidado aplicable. Sostuvo que los daños reclamados eran atribuibles a condiciones preexistentes al accidente laboral del señor Pabón del Río o a actos de terceros. De igual manera, planteó varias defensas, que incluyen falta de causalidad, negligencia comparada, prescripción y ausencia de una reclamación válida. Finalmente, solicitó que se desestimara la reclamación en su contra.

Durante el periodo de descubrimiento de prueba, el recurrido indicó que no contaba con prueba pericial y así lo ratificó en el *Informe de Conferencia con Antelación a Juicio*[6].

Así las cosas, el 14 de octubre de 2025, la peticionaria presentó una *Solicitud de Desestimación Bajo la Regla 10.2*[7] en la cual argumentó que la reclamación del recurrido dejó de exponer una reclamación para la concesión de un remedio. Esto, debido a que pretendía imputarle responsabilidad a la CFSE sobre las actuaciones de otra agencia gubernamental sobre la cual no tiene ninguna injerencia. En respuesta, el 5 de noviembre de 2025, el señor Pabón del Río radicó una *Moción de Reconsideración y en Oposición a Desestimación*[8]. En la misma, esbozó que la *Demanda* sí

---

[5] Apéndice 34 del recurso de *Certiorari*.
[6] Apéndice 63 del recurso de *Certiorari*, Anejo Exhibit 17C, pág. 8, líneas 7-11 y Apéndice 42 del recurso de *Certiorari*.
[7] Apéndice 44 del recurso de *Certiorari*.
[8] Apéndice 49 del recurso de *Certiorari*.

exponía una causa de acción válida por daños y perjuicios, ya que la peticionaria, presuntamente, actuó de forma negligente al negarse durante años a emitir certificaciones de compensabilidad que reflejaran los diagnósticos de mielopatía y radiculopatía de éste, a pesar de que dichos diagnósticos constaban en sus propios expedientes médicos. Según el señor Pabón del Río, esa actuación retrasó por aproximadamente siete (7) años la aprobación de su pensión por incapacidad ocupacional, causándole daños.

Analizadas las posiciones de las partes, el 25 de noviembre de 2025, el TPI emitió y notificó una *Resolución*[9] en la cual declaró *No Ha Lugar* la *Solicitud de Desestimación Bajo la Regla 10.2* presentada por la peticionaria.

El 20 de marzo de 2026, la CFSE sometió una *Moción de Sentencia Sumaria*[10] en la cual sostuvo que no existía controversia real sobre hechos esenciales, debido a que el recurrido no contaba ni presentó prueba pericial médica para demostrar que la peticionaria actuó negligentemente o que sus actuaciones causaron la demora en la concesión de la pensión por incapacidad ocupacional. Además, adujo que las determinaciones sobre la concesión o denegación de dicha pensión correspondían exclusivamente a la Junta de Retiro, entidad autónoma e independiente, por lo que la CFSE no podía ser responsabilizada por

---

[9] Apéndice 51 del recurso de *Certiorari.*

[10] La moción estuvo acompañada de los siguientes documentos: Decisión del Administrador sobre Incapacidad Parcial Permanente, Decisión del Administrador Sobre Tratamiento Médico, Decisión del Administrador Sobre Tratamiento Médico 13-64-41933, Solicitud de Pensión por Incapacidad, Carta Denegatoria Junta de Retiro, Área de Determinación de Incapacidad Revisión Médica de Expedientes, Apelación ante la Junta de Retiro, Resolución sobre devolución, Moción para someter evidencia y para solicitar devolución del caso, Carta de Aprobación Junta de Retiro, Resolución sobre retroactivo, Certificación de Compensabilidad para la Administración de Sistemas de Retiro de Empleados del E.L.A del 27 de diciembre de 2013, Certificación de Compensabilidad para la Administración de Sistemas de Retiro de Empleados del E.L.A del 30 de abril de 2014, Certificación de Compensabilidad para la Administración de Sistemas de Retiro de Empleados del E.L.A del 30 de mayo de 2017, Solicitud de Copia de Récord Médico, Solicitud de Copia de Récord Médico y Certificado Médico, Deposición del Sr. Orlando J. Pabón del Río y Deposición de la Lcda. Mayrangely Rodríguez Ramos.

sus decisiones ni por el tiempo que tomó resolver la solicitud del señor Pabón del Río.

Por su parte, el 26 de marzo de 2026, el señor Pabón del Río presentó una *Moción en Oposición a Sentencia Sumaria*[11]. En ésta, argumentó que existían controversias materiales de hechos que impedían la disposición sumaria del caso. Alegó que la CFSE actuó negligentemente al omitir durante años los diagnósticos de mielopatía y radiculopatía en las certificaciones de compensabilidad, pese a que dichos diagnósticos constaban en sus propios expedientes médicos, lo que provocó que el Sistema de Retiro denegara inicialmente su solicitud de pensión por incapacidad ocupacional. Según el recurrido, el caso de autos no trataba sobre un caso de impericia médica que requiera prueba pericial, sino de una reclamación por negligencia administrativa en el trámite de su caso. Asimismo, esgrimió que existían controversias sobre la actuación de la peticionaria, el nexo causal y los daños sufridos que debían resolverse en un juicio.

Evaluados los escritos de las partes, el 15 de mayo de 2026, el foro recurrido emitió y notificó una *Resolución* en la cual realizó las siguientes determinaciones de hechos:

**DETERMINACIONES DE HECHOS NO CONTROVERTIDOS**

1. El señor Orlando Pabón del Río sufrió un accidente de trabajo el 9 de abril de 2013.

2. El 11 de abril de 2013, el señor Pabón del Río fue atendido en la Corporación del Fondo del Seguro del Estado, Hospital Industrial.

3. El 18 de septiembre de 2013, el señor Pabón del Río fue operado por el doctor Enrique Escobar en el Hospital Industrial.

4. En el informe postoperatorio relacionado con la intervención quirúrgica del 18 de septiembre de 2013

---

[11] Apéndice 65 del recurso de *Certiorari*. La moción estuvo acompañada de los siguientes documentos: Informe Post Operatorio Hospital Industrial, Hoja de Referido Hospital Industrial, Informe Médico Especial, Certificado Médico del Doctor Enrique Escobar, Decisión del Administrador Sobre Tratamiento Médico, Informe del Oficial Examinador de la Comisión Industrial de Puerto Rico e Informe de Caso Técnico-Médico.

se consignó un diagnóstico de "cervical disc herniation with radiculopathy and myelopathy".

5. Pabón del Río recibió tratamiento médico en la CFSE hasta su alta definitiva del 23 de octubre de 2014, conforme surge de la Decisión del Administrador sobre Incapacidad Parcial Permanente.

6. Apelada dicha determinación ante la Comisión Industrial, el caso fue devuelto a la jurisdicción de la CFSE para mayor tratamiento.

7. El señor Pabón del Río fue dado de alta nuevamente el 14 de enero de 2022.

8. Posteriormente, la Comisión Industrial le reconoció incapacidad total permanente mediante Resolución notificada el 2 de mayo de 2024.

9. El 27 de diciembre de 2013, Pabón del Río solicitó beneficios de incapacidad ocupacional ante el Sistema de Retiro.

10. El Sistema de Retiro denegó la solicitud de incapacidad ocupacional el 26 de junio de 2015, bajo el fundamento de que, "de los informes médicos que constaban en su poder relativos a sus condiciones, se ha determinado que no está total y permanentemente incapacitado para cumplir con los deberes del puesto que en el servicio del patrono se le hubiere asignado".

11. Inconforme con dicha determinación, Pabón del Río presentó apelación ante la Junta de Síndicos el 29 de julio de 2015.

12. Luego de varios trámites administrativos, la Junta de Retiro emitió Resolución, notificada el 18 de agosto de 2021, devolviendo a la jurisdicción de la Administración para que revalúe la procedencia de cualquier pensión aplicable a la luz de la totalidad del expediente, teniendo en cuenta la condición de esguince dorsal y demás condiciones alegadas y evaluadas inicialmente.

13. La Junta de Retiro le requirió al demandante que sometiera certificación de compensabilidad enmendada para que incluyera las nuevas condiciones que fueron alegadas en su apelación.

14. La representación legal de Pabón del Río ante la Junta de Retiro sometió certificación de compensabilidad enmendada del 30 de mayo de 2017 y evidencia médica adicional.

15. Mediante comunicación del 3 de marzo de 2022, la Junta de Retiro aprobó al señor Pabón del Río beneficios de pensión por incapacidad bajo la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, por llenar los listados 1.03A y 1.05C, por sus condiciones ocupacionales.

16. El 30 de junio de 2022, la Junta de Retiro comunicó a Pabón del Río que la pensión por incapacidad ocupacional había sido aprobada con efectividad del 4 de marzo de 2021.

17. La CFSE expidió certificaciones de compensabilidad a Pabón del Río en las fechas del 27 de diciembre de 2013, 30 de abril de 2014 y 30 de mayo de 2017.

18. Pabón del Río tuvo acceso y obtuvo copia de su expediente médico ante la Corporación del Fondo del Seguro del Estado, según surge de las solicitudes de copia de récord médico con fechas del 20 de diciembre de 2013 y 28 de marzo de 2017.

19. Pabón del Río no ha anunciado, ni presentará testimonio pericial médico alguno, según se desprende del Informe sobre Conferencia con Antelación a Juicio, presentado el 8 de octubre de 2025 y discutido en la vista celebrada el 15 de octubre de 2025.

20. Durante su deposición, Pabón del Río indicó que no contaba con prueba pericial médica para sostener sus alegaciones.

21. Durante su deposición, Pabón del Río indicó que le denegaron el beneficio de incapacidad ocupacional por falta de evidencia médica.

22. Durante su deposición, la licenciada Mayrangely Rodríguez Ramos, representante de la Junta de Retiro, declaró que las determinaciones de incapacidad ocupacional son tomadas por médicos.

23. La licenciada Rodríguez Ramos también declaró que la Junta de Retiro utiliza la certificación de compensabilidad para determinar que las condiciones que está alegando e incapacitan al empleado, son en efecto ocupacionales.

24. La licenciada Rodríguez Ramos declaró que la Junta de Retiro utiliza un reglamento que incluye los códigos médicos que establecen los parámetros para determinar cuándo una condición se convierte en incapacitante.

25. Pabón del Río presentó apelación solicitando se le concediera el pago retroactivo de la pensión por incapacidad ocupacional a la fecha de la radicación de su solicitud, en exceso del término provisto por la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, conocida como la Ley del Sistema de Retiro de los Empleados del Gobierno.

26. La referida apelación fue declarada sin lugar mediante Resolución notificada el 13 de febrero de 2023.

### HECHOS MATERIALES EN CONTROVERSIA

1. Si, al momento de expedir las certificaciones de compensabilidad pertinentes, la CFSE tenía ante sí información médica suficiente relacionada con los diagnósticos de mielopatía y radiculopatía del señor Pabón del Río.

2. Si los diagnósticos de mielopatía y radiculopatía constaban en el expediente médico de la CFSE en fechas pertinentes para la evaluación de la solicitud de incapacidad ocupacional ante la Junta de Retiro.

3. Si las certificaciones de compensabilidad emitidas por la CFSE omitieron diagnósticos o información médica

material que debió ser incluida para fines del trámite ante la Junta de Retiro.

4. Si la omisión, de haber ocurrido, constituyó una actuación u omisión negligente de la CFSE.

5. Si existe nexo causal entre las actuaciones u omisiones imputadas a la CFSE y los daños reclamados por la parte demandante.

6. Si la determinación de la Junta de Retiro, como entidad administrativa independiente, rompe o no el nexo causal alegado por la parte demandante.

7. La naturaleza, existencia y cuantía de los daños reclamados por la parte demandante, de probarse responsabilidad[12]. (Énfasis suplido).

En vista de lo anterior, el TPI declaró *No Ha Lugar* la *Moción de Sentencia Sumaria* presentada por la CFSE.

Inconforme con el dictamen, el 15 de junio de 2026, la peticionaria acudió ante este foro intermedio y le imputó al TPI la comisión de los siguientes señalamientos de error:

PRIMER ERROR: Erró el Honorable Tribunal de Primera Instancia al dictar Resolución declarado No Ha Lugar la Moción de Sentencia Sumaria cuando el demandante-recurrido no cuenta con prueba pericial que pueda establecer la existencia de un nexo causal entre la certificación de compensabilidad emitida por la CFSE y la determinación denegatoria de la Junta de Retiro.

SEGUNDO ERROR: Erró el Honorable Tribunal de Primera Instancia al dictar Resolución declarado No Ha Lugar la Moción de Sentencia Sumaria cuando el demandante-recurrido no cuenta con prueba pericial que derrote la presunción de corrección que cobija la certificación de compensabilidad que emite la CFSE con relación al trámite que exige la Junta de Retiro.

El 16 de junio de 2026, emitimos y notificamos una *Resolución* en la cual le concedimos al recurrido diez (10) días para mostrar causa por la cual no se deba expedir el recurso presentado. En cumplimiento con lo anterior, el 23 de junio de 2026, el señor Pabón del Río sometió su alegato en el cual adujo que existían controversias genuinas de hechos sobre si la CFSE fue negligente al omitir sus diagnósticos en las certificaciones de compensabilidad y si esa omisión provocó la denegación inicial de su pensión por incapacidad. Además, sostuvo que su reclamación era de

---

[12] Apéndice 67 del recurso de *Certiorari*, págs. 4-7.

negligencia administrativa, no de impericia médica, por lo que la ausencia de prueba pericial no justificaba la desestimación sumaria del caso.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**-A-**

El auto de *certiorari* es un recurso procesal discrecional y extraordinario mediante el cual un tribunal de mayor jerarquía puede rectificar errores jurídicos en el ámbito de la Regla 52.1 de Procedimiento Civil[13] y conforme a los criterios que dispone la Regla 40 del Reglamento del Tribunal de Apelaciones[14]. Nuestro ordenamiento judicial ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto[15]. Esta norma de deferencia también aplica a las decisiones discrecionales de los tribunales de instancia. En cuanto a este particular, el Tribunal Supremo de Puerto Rico ha expresado lo siguiente:

> No hemos de interferir con los tribunales de instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último (1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción, o (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo[16].

En ausencia de tal abuso o de acción prejuiciada, error o parcialidad, no corresponde intervenir con las determinaciones del Tribunal de Primera Instancia[17]. No obstante, la Regla 52.1 de Procedimiento Civil, *supra,* faculta nuestra intervención en

---

[13] 32 LPRA Ap. V, R. 52.1.
[14] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, pág. 63, 216 DPR __ (2025).
[15] *Coop. Seguros Múltiples de P.R. v. Lugo,* 136 DPR 203, 208 (1994).
[16] *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).
[17] *García v. Padró,* 165 DPR 324, 334-335 (2005*); Zorniak Air Servs. v. Cessna Aircraft Co.,* 132 DPR 170, 180 (1992).

situaciones determinadas por la norma procesal. En específico establece que:

> [...] El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión[18].
> [...]

En armonía con lo anterior, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, para dirigir la activación de nuestra jurisdicción discrecional en estos recursos dispone que para expedir un auto de *certiorari*, este Tribunal debe tomar en consideración los siguientes criterios:

> A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se encuentra el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Por lo tanto, un *certiorari* solo habrá de expedirse si al menos uno de estos criterios aconseja la revisión del dictamen recurrido.

---

[18] 32 LPRA Ap. V, R. 52.1.

Es decir, el ordenamiento impone que ejerzamos nuestra discreción y evaluemos si, a la luz de alguno de los criterios contenidos en la misma, se requiere nuestra intervención.

**-B-**

El mecanismo procesal de la sentencia sumaria surge de la Regla 36 de Procedimiento Civil[19]. Por medio de este mecanismo, una parte puede solicitar que el tribunal que dicte sentencia sumaria de la totalidad de la reclamación o de parte de esta[20]. Sin embargo, la sentencia sumaria solo está disponible para la disposición de aquellos casos que sean claros; cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda; y que solo reste por disponer las controversias de derecho existentes[21].

Por su parte, el promovente de una sentencia sumaria deberá establecer, mediante declaraciones juradas o con prueba admisible en evidencia, que no existe controversia real respecto a hechos materiales de la controversia[22]. Por hechos materiales se entienden aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo[23].

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia que sea real por lo cual cualquier duda es insuficiente para derrotar una solicitud de sentencia sumaria[24]. En efecto, la duda debe ser tal que permita concluir que existe una controversia real y sustancial sobre los hechos materiales[25]. De esta manera, la parte promovida debe puntualizar los hechos propuestos que pretende controvertir, haciendo referencia a la prueba específica que sostiene su

---

[19] 32 LPRA Ap. V, R. 36.
[20] *Vera v. Dr. Bravo*, 161 DPR 308, 332 (2004).
[21] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911-912 (1994).
[22] *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 110 (2015).
[23] *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).
[24] *Meléndez González et al. v. M. Cuebas, supra*, pág. 110.
[25] *Íd.*

posición[26]. Es decir, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa"[27]. No puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa[28].

Entretanto, la Regla 36.3 de Procedimiento Civil establece el procedimiento para la consideración de la moción de sentencia sumaria, así como el contenido de la moción y de la contestación de la parte promovida[29]. Respecto a la moción para que se dicte una sentencia sumaria, la Regla 36.3 (a) de Procedimiento Civil dispone que la misma tiene que desglosar lo siguiente:

(1) una exposición breve de las alegaciones de las partes;
(2) los asuntos litigiosos o en controversia;
(3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;
(4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
(5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y
(6) el remedio que debe ser concedido[30].

Por otra parte, la Regla 36.3 (b) de Procedimiento Civil dispone que la contestación a la moción de sentencia sumaria debe contener, además de los sub incisos (1), (2) y (3) del inciso (a): una relación de los hechos esenciales y pertinentes que están en controversia, con referencia a los párrafos enumerados por la parte promovente y con indicación de la prueba en la que se establecen esos hechos; una enumeración de los hechos que no están en controversia; y las razones por las cuales no se debe dictar la sentencia, argumentando

---

[26] *León Torres v. Rivera Lebrón,* 204 DPR 20, 44 (2020).
[27] *Íd.,* pág. 44.
[28] *Ramos Pérez v. Univisión, supra*, págs. 215-216.
[29] 32 LPRA Ap. V, R. 36.3.
[30] 32 LPRA Ap. V, R. 36.3 (a).

el derecho aplicable[31]. Asimismo, cuando se presente una solicitud de sentencia sumaria conforme a la Regla 36 de Procedimiento Civil, *supra,* "la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede"[32].

Igualmente, la Regla 36.3 de Procedimiento Civil[33], dispone que:

[…]

(e) La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que como cuestión de derecho el tribunal debe dictar sentencia sumaria a favor de la parte promovente.

[…]

Como mencionamos anteriormente, la parte promovente de una solicitud de sentencia sumaria está obligada a establecer, mediante prueba admisible en evidencia, la inexistencia de una controversia real respecto a los hechos materiales y esenciales de la acción. Además, deberá demostrar que, a la luz del derecho sustantivo, amerita que se dicte sentencia a su favor[34]. Para que tal sea el resultado, viene llamado a desglosar, en párrafos numerados, los hechos respecto a los cuales aduce que no existe disputa alguna. Una vez expuestos, debe especificar la página o párrafo de la declaración jurada u otra prueba admisible que sirven de apoyo a su contención[35]. **Cuando de las propias alegaciones, admisiones**

---

[31] 32 LPRA Ap. V, R. 36.3 (b).
[32] 32 LPRA Ap. V, R. 36.3 (c).
[33] 32 LPRA Ap. V, R. 36.3 (e).
[34] *Rodríguez García v. UCA*, 200 DPR 929 (2018), Ramos Pérez v Univisión, 178 DPR 200 (2010), *Sucn. Maldonado v. Sucn. Maldonado,* 166 DPR 154, (2005); *Vera v Dr. Bravo, supra.*
[35] 32 LPRA Ap. V, R. 36.3 (a)(4); *Roldán Flores v. M. Cuebas, et al.,* 199 DPR 664, (2018); *SLG Zapata-Rivera v. J.F.,* 189 DPR 95 (2013).

**o declaraciones juradas, surge una controversia bonafide de hechos, la moción de sentencia sumaria resulta ser improcedente. Ante ello, el tribunal competente debe abstenerse de dictar sentencia sumaria en el caso y cualquier duda en su ánimo, lo debe llevar a resolver en contra de dicha solicitud**[36].

El Tribunal Supremo de Puerto Rico ha expresado en varias ocasiones que la sentencia sumaria es un remedio extraordinario y discrecional que solo se debe conceder cuando no existe una controversia genuina de hechos materiales y lo que resta es aplicar el derecho[37]. En términos generales, al dictar sentencia sumaria, el tribunal deberá hacer lo siguiente:

(1) analizar los documentos que acompañan la solicitud de sentencia sumaria y los que se incluyen con la moción en oposición, así como aquellos que obren en el expediente del tribunal;

(2) determinar si el oponente de la moción controvirtió algún hecho material y esencial, o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos[38].

Analizados estos criterios, el tribunal no dictará sentencia sumaria cuando: "(1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) **surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material y esencial**, o (4) como cuestión de derecho, no proceda"[39]. La sentencia sumaria se puede dictar a favor o en contra de la parte que la solicita, según proceda en Derecho[40].

Por tratarse de un remedio discrecional, el uso del mecanismo de sentencia sumaria tiene que ser mesurado y solo procederá cuando el tribunal quede claramente convencido de que tiene ante

---

[36] *Vera v Dr. Bravo, supra*; *Mgmt. Adm. Servs., Corp. v. ELA*, 152 DPR 599 (2000).
[37] *Maldonado v. Cruz*, 161 DPR 1, 39 (2004).
[38] *Vera v. Dr. Bravo, supra*, 334.
[39] *Íd.*, págs. 333-334; *Acevedo Arocho v. Depto. Hacienda y otros*, 212 DPR 335, 336 (2023).
[40] *Maldonado v. Cruz, supra*, pág. 39.

sí documentos no controvertidos[41]. De tal manera, solo procede dictar sentencia sumaria cuando surge claramente que el promovido por la moción no puede prevalecer bajo ningún supuesto de hechos y que el tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia[42]. Cuando no existe una clara certeza sobre todos los hechos de la controversia, no procede una sentencia sumaria[43]. Cualquier duda sobre la existencia de una controversia sobre los hechos materiales, debe resolverse contra la parte promovente[44]. Toda inferencia que se haga a base de los hechos y documentos que obren en los autos, debe tomarse desde el punto de vista más favorable al que se opone a la solicitud de sentencia sumaria[45]. Así pues, tomando en consideración que la sentencia sumaria es un remedio de carácter discrecional, "[e]l sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido proceso de ley"[46].

Es importante mencionar que, este Tribunal utilizará los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una moción de sentencia sumaria[47]. Por consiguiente, los criterios que este foro intermedio debe tener presentes al atender la revisión de una sentencia sumaria son los siguientes:

(1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil y la jurisprudencia le exigen al foro primario;

(2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36;

(3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, de exponer

---

[41] *Vera v. Dr. Bravo, supra,* pág. 334.
[42] *Nieves Díaz v. González Massas,* 178 DPR 820, 848 (2010).
[43] *Metrop. de Préstamos v. López de Victoria,* 141 DPR 844 (1996).
[44] *Rosario v. Nationwide Mutual,* 158 DPR 775, 780 (2003) citando a *Audiovisual Lang. v. Sist. Est. Natal Hnos.,* 144 DPR 563, 575 (1997).
[45] *Mgmt. Adm. Servs. Corp. v. E.L.A.,* 152 DPR 599, 610- 611 (2000).
[46] *Roig Com. Bank v. Rosario Cirino,* 126 DPR 613, 617 (1990).
[47] *Vera v. Dr. Bravo, supra,* pág. 334.

concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos;

(4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia[48].

Finalmente, y como norma general, si la moción procede en derecho, el tribunal debe dictar la sentencia sumaria "a favor del promovente si la parte contraria no responde de forma detallada y específica a una solicitud debidamente formulada"[49]. Si el Tribunal de Primera Instancia considera que no procede dictar sentencia sumaria en el caso que tiene ante sí, o que no procede conceder ese remedio en su totalidad, es obligatorio que cumpla con lo expuesto en la Regla 36.4 de las de Procedimiento Civil[50], la cual dispone que:

> Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, ni se concede todo el remedio solicitado o se deniega la misma, y es necesario celebrar juicio, **será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, y hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando los procedimientos ulteriores que sean justos en el pleito, incluso una vista evidenciaria limitada a los asuntos en controversia.** Al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad. (Énfasis nuestro).

En conclusión, es menester consignar los hechos que, a juicio del TPI, están en controversia y aquellos que no lo están para entender cuáles son los hechos que impiden que se dicte la sentencia sumaria en su totalidad.

**III.**

Previo a atender la controversia ante nos, es importante mencionar que, conforme a la Regla 52.1 de las de Procedimiento Civil, *supra*, este Tribunal tiene jurisdicción para atender el presente recurso, toda vez que es una *Resolución* de carácter dispositivo. Sin

---

[48] *Roldan Flores v. M Cuebas*, 199 DPR 664, 679 (2018).
[49] *SLG Zapata-Rivera v. J. F. Montalvo*, 189 DPR 414, 432 (2013).
[50] 32 LPRA Ap. V, R. 36.4.

embargo, a pesar de que este es susceptible de revisión, de conformidad con la precitada regla, determinamos denegar su expedición.

Luego de evaluar la totalidad del expediente y la bien fundamentada *Resolución* del TPI, a la luz de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra,* no identificamos razón por la cual este Foro deba intervenir con el dictamen recurrido, ya que no se configura ninguna de las situaciones que allí se contemplan. Recordemos que nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios en los que el TPI haya sido arbitrario, cometido un craso abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo. Reiteramos que en el recurso que aquí atendemos no se nos ha demostrado que haya alguno de estos escenarios.

**IV.**

Por los fundamentos que anteceden, ***denegamos*** el recurso de epígrafe.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. La Juez Barresi Ramos concurre sin voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones